# CERTIFICATE TO BE ATTACHED TO DOCUMENTARY
## EVIDENCE ACCOMPANYING REQUISITIONS IN
## THE UNITED STATES FOR EXTRADITION
### AMERICAN FOREIGN SERVICE



Ottawa, Canada          02-23-2015
_____
Place and Date *(mm-dd-yyyy)*

I, _____ Bruce A. Heyman _____, _____ Ambassador _____
                    Name                                        Title

of the United States of America at        Ottawa, Canada

hereby certify that the annexed papers, being        supporting documents


proposed to be used upon an application for the extradition from the United States of America

of Ryan John LASERE

charged with the crime of        to stand trial for second degree murder under the Canadian Criminal

Code

alleged to have been committed in        the Province of Quebec

are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunals of Canada

as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed

this _____ 23rd _____ day of _____ February 2015 _____
                                              Month and Year

_____
Signature


Bruce A. Heyman, Ambassador of the United States
_____
Type Name and Title of Certifying Officer
of the United States of America.

DS-36
04-2014

## CERTIFICATE OF AUTHENTICATION

*IN THE MATTER OF the extradition of Ryan John LAZORE from the United States of America to Canada*

I, CATHY CHALIFOUR, Counsel for the International Assistance Group, Department of Justice of Canada, do hereby certify:

THAT attached to this Certificate is authenticated documentation presented by Canada in support of the extradition of *RYAN JOHN LAZORE* who is wanted in the Province of Quebec to stand trial for murder under the *Criminal Code.*

THAT the documentation attached to this certificate is composed of:
- the original Affidavit of Dany Jean, Prosecuting Attorney, Director of Criminal and Penal Prosecution, prepared on February 18, 2015, to which is attached:
  - as exhibit "A", a copy of the Warrant for Arrest

THAT Anna Jensen whose original signature appears at the end of the Affidavit of Dany Jean is a Commissioner of Oaths in and for the Province of Quebec, having been duly commissioned and duly authorized by the laws thereof to administer oaths and to take affidavits within the said Province.

The Seal of the Minister of Justice of Canada is hereby affixed this 23rd day of February 2015.

Cathy Chalifour

Canada

CANADA

PROVINCE OF QUEBEC

Nº: 760-01-073284-140

RE: DIRECTOR OF CRIMINAL AND PENAL PROSECUTIONS

v.

Ryan John LAZORE

IN THE MATTER OF THE REQUEST FOR THE EXTRADITION OF Ryan John LAZORE PRESENTED BY CANADA TO THE UNITED STATES OF AMERICA

---

STATEMENT UNDER THE TERMS OF ARTICLE 9 OF THE TREATY ON EXTRADITION BETWEEN THE GOVERNMENT OF CANADA AND THE GOVERNMENT OF THE UNITED STATES OF AMERICA

---

I, Dany Jean, prosecuting attorney for the Director of Criminal and Penal Prosecutions of Québec, having my principal place of business at 2828, boulevard Laurier, Québec, in the province of Québec, being duly sworn, declare the following:

## QUALIFICATIONS

1. I have been a criminal and penal prosecuting attorney in Québec since April 2012 and, as such; I act as a representative and under the authority of the Director of Criminal and Penal Prosecutions of Québec;

2. Under the general authority of the Minister of Justice and Attorney General, the Director of Criminal and Penal Prosecutions directs all criminal and penal prosecutions in Québec on behalf of the State. The Director exercises the functions conferred by the *Act respecting the Director of Criminal and Penal Prosecutions* [Québec Statute. 2005, c. 34], with the independence provided for therein. The Director is by virtue of office "Deputy Attorney General" for criminal and penal prosecutions. The Director is also the lawful deputy of the Attorney General of Québec within the meaning of the *Criminal Code* of Canada (Revised Statutes of Canada [1985], c. C-46), as are the prosecutors under the Director's authority;

3. In the performance of my duties as a criminal and penal prosecuting attorney, I am empowered to represent the Director of Criminal and Penal Prosecutions in the exercise of the functions of office, including that of prosecutor in matters stemming from the application of the *Criminal Code* of Canada. As such, I am authorized to consent to the introduction of proceedings against Ryan John LAZORE (date of birth: 1988-08-17), in the court case bearing number 760-01-073284-140, on behalf of the Director of Criminal and Penal Prosecutions of Quebec;

4. I am authorized by the Director of Criminal and Penal Prosecutions of Québec to initiate the extradition process against Ryan John LAZORE.

## PROSECUTION IN CANADA AND WARRANT FOR ARREST

5. **Appendix A** to this statement contains a copy of the warrant for arrest issued against Ryan John LAZORE on December, 30th 2014 by Justice of the Peace Céline Gervais and a copy of the endorsement of the warrant by Justice Céline Gervais, dated December, 30th 2014, authorizing the arrest of Ryan John LAZORE everywhere in Canada. The warrant and endorsement are evidence of subject's wanted status and of the legal proceedings initiated in Canada. The warrant for arrest has been in force since that date;

6. The Director of Criminal and Penal Prosecutions is requesting the extradition of Ryan John LAZORE for the offence mentioned below;

7. The charge against Ryan John LAZORE pertains to the offence of second degree murder.

## IDENTIFICATION OF RYAN JOHN LAZORE

8. **Appendix B** to this statement contains copies of identification cards (Social Security card, Social Insurance card, Quebec health care card with photo, and a Canadian Indian Status card with photo) of the person known as Ryan John LAZORE and a photograph of Ryan John LAZORE taken on December 30th, 2014 by New York State Troopers. This appendix also contains a statement of Theresa Martin, Ryan John LAZORE's aunt (Lori LAZORE's sister), made on February 11th, 2015 in Akwesasne, Quebec, in which she identified the person on the photos as Ryan John LAZORE who was living at 14 Oak Court, Akwesasne, with his mother, the victim Lori LAZORE;

9. Ryan John LAZORE was arrested by the U.S. authorities on December 30th, 2014 in application of the provisional arrest presented by Canadian authorities and is still being held in the United States.

## OFFENCES AND LEGAL PROVISIONS

10. The *Criminal Code* of Canada deals with most crimes and offences for which criminal proceedings are instituted in Canada -- the provinces and territories, including, the province of Québec. The *Criminal Code* is currently in force;

11. I attest that the prosecution of Ryan John LAZORE is not barred or prevented by lapse of time. There is no time limit under Canadian law respecting an offence for which a person is prosecuted by indictment. The proceeding against Ryan John LAZORE was instituted by indictment and will be prosecuted by indictment;

12. The indictable offence alleged against Ryan John LAZORE was an offence in Canada at the time it was committed and still is. The offence render him liable to imprisonment for life;

13. **Appendix C** to this statement contains the relevant legal provisions of the *Criminal Code* of Canada (including the offence and the sentence provided for).

## SUMMARY OF FACTS AND EVIDENCE

14. **Appendix D** to this statement contains the summary of facts underlying the charge for which Ryan John LAZORE is being prosecuted and his extradition requested.

## OPINION

15. Ryan John LAZORE is charged with second degree murder;

16. In order to find the accused guilty of an offence under the *Criminal Code*, the trier of fact must be satisfied beyond a reasonable doubt that the accused is guilty;

17. I have read the summary of facts, prepared by Detective Sergeant Kariwate Mitchell of the Akwesasne Mohawk Police Service, reproduced as Appendix D to this extradition request;

18. The facts stated in the summary of facts by Detective Sergeant Kariwate Mitchell of the Akwesasne Mohawk Police Service, establish a *prima facie* case upon which a reasonable and properly instructed jury could be satisfied beyond a reasonable doubt that the accused, Ryan John LAZORE, is guilty, and could convict him as charged.

Signed in Québec, February 18th, 2015

Dany Jean
**Criminal and Penal Prosecutor, Attorney**
Director of Criminal and Penal Prosecutions
External Affairs Bureau
2828, boulevard Laurier, suite 500
Québec (Québec) G1V 0B9

Sworn before me
In Québec
February 18th, 2015

Anna Jensen
**Commissioner for Oaths**

ANNA JENSEN
#171854

CANADA

PROVINCE OF QUEBEC

N°:    760-01-073284-140

RE: DIRECTOR OF CRIMINAL
AND PENAL PROSECUTIONS

v.

Ryan John LAZORE

IN THE MATTER OF THE
REQUEST FOR THE
EXTRADITION OF Ryan John
LAZORE PRESENTED BY
CANADA TO THE UNITED
STATES OF AMERICA

---

## APPENDIX A

### WARRANT FOR ARREST AND ENDORSEMENT

---

| MANDAT D'ARRESTATION | WARRANT FOR ARREST |
|---|---|

| | |
|---|---|
| CANADA | CANADA |
| PROVINCE DE QUÉBEC | PROVINCE OF QUÉBEC |
| District | District of Beauharnois |
| Localité | Locality of Salaberry-de-Valleyfield |
| Dossier | Record 760-01-073284-140 |
| Événement | Case Number QUE-14-2417 |
| PPCP au dossier | CPPA on file Hélène Langis (AV8162) |
| Le présent mandat est décerné pour l'arrestation de | This warrant is issued for the arrest of |
| | Ryan John LAZORE (001) (M) |
| né(e) le | born on 1988-08-17 |
| permis de | driver's |
| conduire | licence |
| adresse | address 14, Oak Count |
| | Akwesasne, Québec, H0M 1A0 |
| Ci-après appelé le prévenu. | Hereinafter called the accused. |
| ATTENDU QUE vous avez été inculpé devant moi comme suit: | WHEREAS you have been charged before me as follows: |

QUE-14-2417

Ryan John LAZORE (001)

1. On or about December 29, 2014, in Akwesasne, district of Beauharnois, did cause the death of Lori Lazore, committing thereby a second degree murder, the indictable offence provided by section 235 of the Criminal Code.

# EXHIBITS

| | |
|---|---|
| ET ATTENDU QU'il y a des motifs raisonnables de croire qu'il est nécessaire dans l'intérêt public de décerner le présent mandat pour l'arrestation du prévenu (art. 507(4) C.cr.). | WHEREAS there are reasonable grounds to believe that it is necessary in the public interest to issue this warrant for the arrest of the accused (507(4) of the Criminal Code). |
| À CES CAUSES, les présentes ont pour objet de vous enjoindre, au nom de Sa Majesté, d'arrêter immédiatement le prévenu et de l'amener devant moi ou tout autre juge de paix afin qu'il réponde à cette inculpation et soit traité selon la loi | THEREFORE, THIS IS to command you, In Her Majesty's name, forthwith to arrest the accused and to bring him (her) before me, or any other justice for the district of Beauharnois in order that he (she) plead to this charge and be dealt with according to law. |

À

At Salaberry-de-Valleyfield, on 2014-12-30

Juge de paix (en majuscules)

Justice of the peace (in block)

_____

Juge de paix                                   Justice of the peace

7.                                                     7.

CÉLINE GERVAIS.

FORM 28

(Section 528 and 703 (1) C.cr)

## ENDORSEMENT OF WARRANT

760-01- O73284 - 140

Canada

Province of Québec

District of Beauharnois

In accordance with the request made before me today, I hereby authorize the arrest of Ryan John LAZORE (1988-08-17) anywhere in Canada.

Salaberry-de-Valleyfield, December 30th 2014

J.C.Q.

CANADA

PROVINCE OF QUEBEC

N°:    760-01-073284-140

RE: DIRECTOR OF CRIMINAL
AND PENAL PROSECUTIONS

v.

Ryan John LAZORE

IN THE MATTER OF THE
REQUEST      FOR      THE
EXTRADITION   OF   Ryan   John
LAZORE    PRESENTED    BY
CANADA  TO  THE  UNITED
STATES OF AMERICA

---

### APPENDIX B

### IDENTIFICATION CARDS FOUND ON RYAN JOHN LAZORE ON DECEMBER 30, 2014

---



SOCIAL
INSURANCE
NUMBER

NUMÉRO
D'ASSURANCE
SOCIALE

287 762 611

RYAN JOHN LAZORE












Portex toujours votre carte sur vous.

À défaut de présenter une carte valide, il faut payer les
services reçus et en demander le remboursement à la Régie.
Si la carte est expirée, adressez-vous à la Régie.

Cette carte demeure la propriété de la Régie de l'assurance
maladie et doit être retournée à sa demande.

C. P. 6600, Québec (Québec) G1K 7T3

**Don d'organes... DON DE VIE**

Si vous consentez au don d'organes à votre décès, veuillez
apposer l'autocollant à l'intérieur de cet espace et le signer.

**APPENDIX B**

NY STATE TROOPER PHOTOGRAPH OF DECEMBER 30, 2014



**APPENDIX B**

**THERESA MARTIN'S STATEMENT OF FEBRUARY 11, 2015**

# AKWESASNE MOHAWK POLICE — STATEMENT FORM

| NAME: Theresa A. Martin | DATE OF BIRTH: 1962/06/25 | OCCURRENCE NUMBER: 14-2417 | PAGE NO: 1 |
|---|---|---|---|

Q: The Akwesasne Mohawk Police are investigating the death of Lori Lazore. Do you mind if I ask you a few questions?

A: No.

Q: Would you be able and willing to identify a photograph?

A: Yes.

Q: Can you identify this individual in the photograph?

A: Ryan John Lazore Aka: RJ.

Q: What is your relationship to Ryan John Lazore?

A: I'm his Aunt.

Q: How long have you known Ryan John Lazore?

A: All his life.

Q: Where does Ryan John Lazore reside?

A: With his mother at 14 Oak Court.

Q: Who is his mother?

A: Lori S. Lazore.

Q: Were they the only ones who lived at 14 Oak Court?

A: Yes, Danielle Lazore would sometimes live there.

Q: Who is Danielle Lazore?

A: Lori's daughter and Ryan's sister.

Q: When did she last live at the residence at 14 Oak Court?

A: I don't know because she was in school.

Q: Can you describe the photo I showed you?

A: Ryan is wearing a plad black & brown jacket, growing a beard, and wears a white undershirt.

And I make a solemn declaration, which I consciously believe to be truthful and I understand that it bears the same force and the same consequences as if it would have been made under oath, under the terms of the Law of the proof of Canada.

Declarant's Signature: Theresa A. Martin          Date: Feb. 11, 2015

Officer's Signature: Norman King          Date: Feb. 11, 2015



12/30/2014 03:55:54 AM

X _Theresa A. Martin_ Feb. 11, 2015

CANADA

PROVINCE OF QUEBEC

N°:   760-01-073284-140

RE: DIRECTOR OF CRIMINAL
AND PENAL PROSECUTIONS

v.

Ryan John LAZORE

IN THE MATTER OF THE
REQUEST FOR THE
EXTRADITION OF Ryan John
LAZORE PRESENTED BY
CANADA TO THE UNITED
STATES OF AMERICA

---

## APPENDIX C

### RELEVANT STATUTORY PROVISIONS OF THE *CRIMINAL CODE* OF CANADA

---

**Murder**

**229.** Culpable homicide is murder

(*a*) where the person who causes the death of a human being
(i) means to cause his death, or
(ii) means to cause him bodily harm that he knows is likely to cause his death, and is reckless whether death ensues or not;

(*b*) where a person, meaning to cause death to a human being or meaning to cause him bodily harm that he knows is likely to cause his death, and being reckless whether death ensues or not, by accident or mistake causes death to another human being, notwithstanding that he does not mean to cause death or bodily harm to that human being; or

(*c*) where a person, for an unlawful object, does anything that he knows or ought to know is likely to cause death, and thereby causes death to a human being, notwithstanding that he desires to effect his object without causing death or bodily harm to any human being.

**Classification of murder**

**231.** (1) Murder is first degree murder or second degree murder.

**Planned and deliberate murder**

(2) Murder is first degree murder when it is planned and deliberate.

**Contracted murder**

(3) Without limiting the generality of subsection (2), murder is planned and deliberate when it is committed pursuant to an arrangement under which money or anything of value passes or is intended to pass from one person to another, or is promised by one person to another, as consideration for that other's causing or assisting in causing the death of anyone or counselling another person to do any act causing or assisting in causing that death.

**Punishment for murder**

**235.** (1) Every one who commits first degree murder or second degree murder is guilty of an indictable offence and shall be sentenced to imprisonment for life.

**Minimum punishment**

(2) For the purposes of Part XXIII, the sentence of imprisonment for life prescribed by this section is a minimum punishment.

CANADA

PROVINCE OF QUEBEC

N°:     760-01-073284-140

RE: DIRECTOR OF CRIMINAL
AND PENAL PROSECUTIONS

v.

Ryan John LAZORE

IN THE MATTER OF THE
REQUEST      FOR      THE
EXTRADITION OF Ryan John
LAZORE    PRESENTED    BY
CANADA  TO  THE  UNITED
STATES OF AMERICA

---

**APPENDIX D**

**SUMMARY OF THE FACTS UNDER THE TERMS OF ARTICLES 9 AND 10 OF
THE TREATY ON EXTRADITION BETWEEN THE GOVERNEMENT OF
CANADA AND THE GOVERNEMENT OF UNITED STATES OF AMERICA**

---

*Prepared by Detective Sergeant Kariwate Mitchell of the Akwesasne Mohawk Police Service, Joint Investigation Team*

1.  I, Kariwate Mitchell, am a police officer of the Akwesasne Mohawk Police Service (hereinafter AMPS) and have been since November 1999. I am currently performing duties as a plain clothes criminal investigator. I can advise that I have knowledge of the investigation and the homicide of Lori Lazore as I have directly participated in this investigation. I can advise also that information contained in this summary have been provided to me through police officers of the AMPS, the New York State Police (NYSP), the Sûreté du Quebec (SQ) and the Royal Canadian Mounted Police (RCMP). This investigation has been filed as Occurrence # 14-2417 on the Records Management System (RMS) of the Akwesasne Mohawk Police System Data Bank, which I have access to and have also obtained information from.

2.  On December 30, 2014 at approximately 12:30 AM, Ryan John LAZORE (hereinafter LAZORE) attended the Twin Leaf Convenience Store located in Fort Covington, New York. LAZORE entered the Twin Leaf Convenience Store and requested to use the phone. The cashier asked LAZORE what number he wished to call and he said that he wanted to speak with the "State Police". The cashier dialled the phone number of the NYSP. The cashier heard LAZORE saying to the police over the phone: "I need you to come pick me up!" LAZORE fixed himself a cup of coffee and stood by the door while he waited for the NYSP to arrive and then he walked out to the police. The store clerk stated that she was not comfortable to be alone with LAZORE inside the store and she asked the gas attendant to stay inside with her until the police arrived. The store clerk said that she saw that LAZORE was bleeding on his hand and she offered him some rubbing alcohol to clean his wound but LAZORE refused help from her.

3.  Shortly after 1:00 AM, the NYSP, Troopers Michael Harmon and Justin Perryman responded to the Twin Leaf Convenience Store and reported that they spoke to a male; later identified as LAZORE. The male was wearing dark gray hooded sweatshirt with patterns on it which zipped in the front, a pair of baggy blue jeans and white Nike sneakers. After being asked what he wanted to speak about by a Trooper, LAZORE told the police on his own will, that he was involved in a fight with his mother which he identified as Lori Lazore. LAZORE told the Troopers that the fight occurred at 14 Oak Court, Akwesasne in Quebec. While Troopers Harmon and Perryman were speaking with LAZORE they observed that he had a cut to his right index finger and noticed blood on his jeans, mainly in the area above his knees.

4.  Trooper Perryman asked LAZORE a series of questions which he documented in his statement. Trooper Perryman first asked LAZORE if his mother was alright and LAZORE answered "no". Trooper Perryman also asked LAZORE if there was anyone else at the residence with his mother and if anyone else had any knowledge of what occurred and LAZORE said "no". Trooper Perryman then asked LAZORE about his mother's condition and LAZORE did not answer. Trooper Perryman waited and then asked LAZORE directly if his mother was alive when he left the residence and he stated "no".

5. Trooper Harmon then searched LAZORE and seized photo identification documents including a United States Social Security Card, Canadian Social Security Card, Quebec Health Card (with photo), Canadian Indian Status Card (with photo), and a Statement of Live Birth. All identification documents were in the name of Ryan John LAZORE, born August 17, 1988. Trooper Harmon also located a letter from LAZORE's father Thomas "Prey" Lazore dated July 3, 2014.

6. Trooper Harmon placed handcuffs on LAZORE and told him that he was being detained and without any resistance he was placed into the rear of the marked police cruiser while Trooper Perryman was trying to make contact with the AMPS in Quebec in order to determine for sure whether a crime had been committed.

7. Trooper Harmon continued investigative questioning with LAZORE. LAZORE told the NYSP Troopers that he had "cut" his mother and when asked where he cut his mother, LAZORE said "everywhere". LAZORE also told the Trooper that he and his mother were having an argument about his father, Thomas Lazore, who LAZORE said that he believed, was a serial killer. LAZORE told the Trooper that he left the knife inside the house and walked from the Oak Court residence to the Twin Leaf Convenience Store in Fort Covington, New York. LAZORE told the Trooper that the distance between both locations was approximately "three or four miles".

8. Troopers Harmon and Perryman escorted LAZORE into the Twin Leaf Convenience Store washroom and took photographs of his profile and hands. One of the photographs taken by Troopers Harmon and Perryman is attached to this extradition request as Appendix B. Trooper Harmon asked LAZORE why there was no blood on his sweatshirt when there was blood on his jeans. LAZORE said he changed his sweatshirt prior to leaving the residence.

9. At approximately 1:14 AM, the AMPS received a telephone call from NYSP Trooper Justin Perryman. Trooper Perryman told the on-duty dispatcher that LAZORE was in the custody of the NYSP and that LAZORE had told the NYSP Troopers that he was in an altercation with his mother and that she was not breathing. Trooper Perryman told the dispatcher that LAZORE was covered in blood and appeared to be in a "state of shock". Trooper Perryman requested dispatch to send the police of jurisdiction to 14 Oak Court, Akwesasne, Quebec to further investigate and check on the status of LAZORE's mother.

10. At approximately 1:34 AM, Sergeant Ranatiiostha Swamp (Sgt.R. Swamp) and Constable Justin Delormier (Cst. J. Delormier) of the AMPS attended to 14 Oak Court, Akwesasne, Quebec. The first responding officers knocked at the door without receiving an answer, police conducted a perimeter check and found what appeared to be blood on the south side door (back door) frame. Police also found what they believed to be drops of blood on the cement slab immediately outside the back door. Police then went back to the front entrance and found that the main door was unlocked.

11. At approximately 1:38 AM, Cst. J. Delormier entered the residence and saw a female body lying face down on the floor between the kitchen and dining room area. There was minimal light from the kitchen stove and a hallway light; the other main lights were off. The body was motionless and covered in

blood with signs of trauma to the back of the head, as the hair was thickened with blood. Sgt.R. Swamp checked the body for vitals, there was no pulse and the body was cold. Sgt.R. Swamp and Cst. J. Delormier secured the scene and notified dispatch to contact members of the Joint Investigation Team.

12. At approximately 2:21 AM, NYSP Trooper Perryman read LAZORE his Miranda Rights at, which time LAZORE said that he understood. NYSP Trooper Perryman asked LAZORE if he was willing to speak with police and he did not respond. LAZORE was then transported to the NYSP Barracks in Malone, New York.

13. At approximately 2:41 AM, the Investigators of the Joint Investigation Team of AMPS arrived and took possession of the scene of 14 Oak Court, Akwesasne from Sgt.R. Swamp. Upon entering in the residence Corporal Ritchie (Cpl. J. Ritchie) of the Joint Investigation Team observed blood on the floor around the female body. A part of a broken chair was near the feet of the deceased female and a bed sheet with blood stains was observed on the love seat approximately eight feet from the body's location.

14. Detective Sergeant Kariwate Mitchell (D/Sgt. Mitchell) of the AMPS observed a black handled knife covered in blood on the entertainment centre by the entry door. D/Sgt. Mitchell asked Sgt. R. Swamp who the female was, he said that based upon the information received from the dispatch call, that he believed that the deceased was Lori Lazore.

15. At 2:45 AM, at the Malone New York State Police barracks, Investigator Joseph Tatro of the NYSP conducted an interview of LAZORE. At the beginning of the interview, after being asked if he is taking medication, LAZORE stated that he takes Zyprexia for schizophrenia. LAZORE then requested to speak with a lawyer and the interview was concluded with no further questioning.

16. At approximately 7:32 AM, Sergeant Aronienens Porter and Constable LeeAnn O'Brien of the AMPS took photos of the deceased female. Sgt. A. Porter told D/Sgt. Mitchell that he observed the face of the deceased to be "smashed in" and Sgt. Porter said that he knew Lori Lazore as she was the wife of his co-worker but the injuries made her face unrecognizable at that specific moment. Sergeant Porter said that he saw puncture wounds to the back of the head and neck area.

17. At approximately 7:58 AM, the body was removed from the residence of 14 Oak Court and transported to the Barrie Memorial Hospital located in Ormstown, Quebec. Dr. Michel Raymond examined the body and pronounced the time of death at 10:10 AM, December 30, 2014.

18. At 9:45 AM Detective Constable Norman King of AMPS attended Valleyfield Provincial Court and met with provincial crown Helene Langis who authorized the charge of second degree murder contrary to section 235 of the *Criminal Code* against LAZORE.

19. At 11:50 AM Detective Constable Norman King of AMPS appeared before Justice of the Peace Celine Gervais, of the Valleyfield Provincial Court and was granted a Canada wide warrant for the arrest of LAZORE for second degree murder charge.

20. At 1:25 PM Corporal James Ritchie and and Detective Constable James Sunday (Det. J. Sunday) of the AMPS met with LAZORE at the NYSP Barracks in Malone, New York. During the interview police informed LAZORE of his constitutional Charter rights and LAZORE remained silent at all time and refused to respond to any question asked by the officers. At the conclusion of the interview with AMPS officers, LAZORE told State Police that he did not wish to speak with any officers of the AMPS and wanted to only speak with New York State Troopers.

21. At 2:00 PM Detective Constable Raweras Mitchell of the Joint Investigation Team of AMPS attended Valleyfield Provincial Court and appeared before Justice Of the Peace Celine Gervais who granted a search warrant subject to section 487 of the *Criminal Code* to search and examine the residence of 14 Oak Court, Akwesasne, Quebec.

22. At 4:45 PM Forensic Identification officers Patrick Lalonde and Sylvie Fortin of the Sûreté Quebec Identification Unit attended 14 Oak Court and began processing the scene. Police seized some items which included clothing that appeared to have blood stains and a black handled knife with what appeared to have blood and tissue on the blade. Police also observed large areas of wet blood in the kitchen where the body had been located and there appeared to be dried blood in the bathroom of the residence.

23. At approximately 6:10 PM, while Detective Sergeant Kariwate Mitchell of AMPS was outside the residence at 14 Oak Court he saw the neighbours outside their residence and approached them. D/Sgt. Mitchell asked if they had seen the neighbours (Lori Lazore and her son) the previous night, on December 29, 2014. The male, who identified himself as Jason Grey, said that he saw LAZORE and his mother Lori Lazore the previous evening before dark and they appeared to be carrying in groceries from the vehicle. Jason Grey said that nothing appeared abnormal.

24. At approximately 8:20 PM, Jean Bergeron, a Quebec Provincial Blood Splatter Expert attended to the residence at 14 Oak Court and began processing the scene. He verbally told police that based upon his examination at this point, that he believed that the victim and the accused would be well known to each other. Mr. Bergeron said that it is difficult to state what would have possibly occurred without information from the post mortem analysis but he did tell police that it appeared as though the accused remained inside the residence for a long period of time and that the accused attempted to wash his hands in both the kitchen and washroom sinks of the residence. Mr. Bergeron also said that the accused changed his shirt three times and that the female was moving her upper body back and forth slightly until she passed away. Mr. Bergeron believed that the accused exited from the residence through the back door.

25. On December 31, 2014 Constable Phillip Boots of the AMPS attended the forensic laboratory located in Montreal (Quebec) for victim's autopsy. The autopsy was performed by Forensic Pathologist Andre Bourgault. As a result, the Forensic Pathologist determined the cause of death was by polytrauma caused by a blunt force object and by a sharp pointed object. The post mortem report showed that Lori Lazore had 225 stab wounds throughout her body.

26. On December 31, 2014 during the autopsy, a photograph of the deceased female believed to be Lori Lazore was taken and was emailed to two AMPS officers. Acting Deputy Chief and Detective Constable James Sunday were both shown the picture of Lori Lazore after her faced was cleaned from the blood. Both officers are lifelong residents of Akwesasne and are in the approximate age group as Lori Lazore. Both officers knew Lori Lazore from growing up in the same community and had common friends and as a result, were able to positively identify through the photo that the deceased female was Lori Lazore (1968-02-05).

27. On January 26, 2015 Detective Constable Norman King of the AMPS attended to speak with Theresa Martin. Theresa Martin identified herself at the onset of this investigation as the sister and next of kin to the deceased Lori Lazore (birth name Laurie-Sue Martin). Detective Norman King showed her the photo taken by the NYSP of LAZORE inside the washroom of the Twin Leaf Convenience Store on December 30, 2014 and asked her to identify the person in the picture if she could. Theresa Martin told Detective King that she knew the person in the photo as her nephew LAZORE and told Detective King that she is certain of who he is as she has known him all of his life. Detective King asked Theresa Martin who resided at 14 Oak Court, Akwesasne Quebec in which Theresa Martin told him that her sister Lori Lazore and Lori's son, Ryan John LAZORE ("RJ") resided together at this residence. Theresa Martin reaffirmed her statement in a written statement signed on February 11, 2015. Her statement is attached to this extradition request as Appendix B.

28. On February 9th, 2015, the Laboratoire des sciences judiciaires et de médecine légale de Montréal (Montréal's Forensic Laboratory) confirmed no fingerprint can be collected from the knife seized at the crime scene due to the large quantity of blood on the object.